IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

|  |  |
|---|---|
| HURLESTINE RANDLE,<br>        Plaintiff,<br><br>v.<br><br>CHASE BANK, GREG HANEY,<br>AND BEV DAVIS ANDERSON,<br>        Defendants. | Case No. 1:13-cv-1503-JEH |

## Order and Opinion

Now before the Court is the Defendants' Motion for Summary Judgment (Doc. 89). The Defendants move for summary judgment as to Count I of the Plaintiff's Third Amended Complaint (Doc. 53), as to the time-barred allegations of battery and assault in Counts II and III of the Plaintiff's Third Amended Complaint, and as to the intentional infliction of emotional distress claim in Count VI against Defendant Chase in the Third Amended Complaint. The Motion is fully briefed and for the reasons set forth below, the Defendants' Motion is GRANTED. Because the grant of that motion resolves the only federal claim in this case, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

## I

On July 8, 2016, Plaintiff Randle filed her Third Amended Complaint (Doc. 53) which is the controlling complaint in this case. In it, Randle alleged that she consistently worked 40-hour workweeks as a full-time employee and never made any complaints to Defendant Chase until Defendants Greg Haney (Haney) and Bev Davis Anderson (Davis) became her supervisors around April 2004. She

alleged their harassment of her began on or around that time when they engaged in practical jokes at her expense. Randle alleged, among other things that: in 2004 she was instructed to take down pictures of her biracial grandchildren on her desk though Defendant Davis kept her non-biracial children's pictures on her desk and it was later confirmed to Randle that she could have pictures of her grandchildren on her desk; in 2004 Davis and Haney put an insect in her sandwich and laughed at her; around April 2004 until October 7, 2009, Randle would schedule doctor's appointments and give Davis two weeks' notice but when the appointment dates came, Davis would take an extra long lunch to intentionally make Randle late for her appointments; from around April 2004 throughout her employment, Randle would attend morning meetings and Defendant Davis would scowl at her when she attempted to talk and Haney would not stop Davis's scowling behavior; around July 2009, Randle asked Haney to cash a check for her at the end of the day and she overheard him and Davis laughing loudly and holding her check up for all to see while commenting about how it came from public aid; around December 2009, the bank branch where Randle worked received a threat and Haney failed to inform her of the threat; around February 2010, Haney gave Randle a birthday card with a picture of a tall skinny black dog standing on its hind legs wearing an apron and serving people to mock Randle based upon her race; around July 2010, Randle was supposed to receive a 20-year anniversary plaque from Chase but she did not receive it and questioned Haney about it who admitted he actually had it for a few weeks but had not given it to her in retaliation for her complaining to their district manager; around February 2011, Randle put her jacket on and discovered long straight pins planted in her coat while at work by Haney and Davis; and around October 2011, a customer entered the bank and stated Randle could pass

2

for a pretty black Barbie doll and later that afternoon, Davis presented Randle with a black baldheaded baby doll.

Randle's original complaint was filed on October 23, 2013 and the Court thereafter dismissed her claims of employment discrimination against Haney and Davis. After Randle filed her first amended complaint, the Court: dismissed her claims for sexual harassment, age discrimination, negligent retention, and retaliation with prejudice; dismissed all battery and assault allegations occurring prior to October 23, 2011; dismissed her claims for trespass, trespass to chattels, and conversion; and limited her claims for battery and assault to events occurring after October 23, 2011. Ultimately, in her Third Amended Complaint[1], Randle brought a count for racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.*, against Chase Bank, a count for battery against Davis, a count for assault against Haney, and counts of intentional infliction of emotional distress against Davis, Haney, and Chase.

## A

The undisputed facts relevant to Defendants' motion for partial summary judgment are as follows.[2]

Plaintiff Hurlestine Randle (Randle) is an African American female that began work at Chase Bank (then known as Jefferson Bank) in July 1990 as a teller at the branch located at 2301 N. Wisconsin Avenue, Peoria, Illinois (Wisconsin Plaza branch). Defendant Davis (a Caucasian female) joined Chase Bank in 1993 and became the Assistant Branch Manager at the Wisconsin Plaza branch in 2003, a position she held until that branch closed in September 2014. Defendant Haney

---

[1] The Court granted the Defendants' Motion to Strike Paragraph 55 of Randle's Second Amended Complaint and directed Randle to file a Third Amended Complaint omitting the allegations of Paragraph 55.

[2] These facts are taken from the various filings of the parties on motion for summary judgment indicating facts that are not in dispute.

(a Caucasian male) was the Branch Manager at the Wisconsin Plaza branch from 2003 until its closing in 2014. The chain of command from 2003 through 2014 was such that Randle reported to Davis, and Davis reported to Haney. Sandra Bergh (Bergh) was the district manager in Central Illinois for Chase Bank from 2005 through at least 2012, including the Peoria locations. Defendant Haney reported to Bergh.

In March 2010, Plaintiff Randle's hours were reduced from 40 hours per week to 30 hours per week. Randle was upset by the reduction in her hours and she blamed Haney and Davis. Initially, Randle complained to Bergh and to Chase human resources in September 2010. Before filing any charges, Randle voiced her complaints about the working environment with Davis and Haney to a number of individuals and departments at Chase Bank, including its CEO Jamie Dimon. Randle filed her first Illinois Department of Human Rights (IDHR)/Equal Employment Opportunity Commission (EEOC) charge against Defendants Davis, Haney, and Chase on August 23, 2012 alleging employment discrimination, harassment, and retaliation based on her race. Randle later withdrew the charge on May 17, 2013. Randle then filed her second IDHR/EEOC charge on June 7, 2013 alleging only retaliatory harassment against Davis, Haney, and Chase, but Randle withdrew that charge in April 2014.

On April 22, 2013, Randle obtained an *ex parte* Emergency Stalking-No Contact Order against Haney and Davis based upon allegations of stalking and harassment, captioned as Peoria County Case Nos. 13-OP-362 and 13-OP-363. Those emergency orders prevented Haney and Davis from coming within 300 feet of Randle at any location. In order to comply with the court's emergency orders, Randle was transferred to the Knoxville Chase Bank branch located at 7707 North Knoxville Avenue, Peoria, Illinois.

Randle's employment at Chase Bank was terminated on May 21, 2014 because she stated that she was unable to work and did not know if she would be able to return at a future date. Immediately prior to her termination, Randle missed a year of work for various physical and mental health issues, including short-term disability granted her by Chase from May 15, 2013 to July 15, 2013 and a leave of absence from July 25, 2013 through October 30, 2013. Randle was on disability because she could not perform her job duties due to various physical and mental health issues, including visual hallucinations.[3] Dr. Mary Papandria, Randle's licensed clinical psychologist who initially saw her in November 2013 to assess her for the presence or absence of disability that would impair her ability to work (for purposes of Social Security disability), stated that Randle was disabled from work at the time she treated her.

**B**

In their Motion for Summary Judgment, the Defendants argue that no materially adverse employment action taken against Randle was motivated by race and that she was not subjected to a hostile work environment based upon her race. They also argue that several alleged discriminatory acts that predate Randle's August 23, 2012 EEOC charge filing by more than 300 days (October 28, 2011 or earlier) are time-barred and that the individual Defendants are entitled to summary judgment on the majority of Randle's assault and battery allegations because they occurred before October 23, 2011 (the statute of limitations for personal injury actions is two years[4] and Randle filed her original complaint on October 23, 2013). The Defendants further argue that Randle's claim for intentional infliction of emotional distress (IIED) against Chase is preempted by

[3] Defendants' Undisputed Material Fact ¶ 2.e. is deemed as such because the Plaintiff did not identify it as disputed and/or immaterial.
[4] 735 ILCS 5/13-202.

5

the Illinois Human Rights Act (IHRA). Lastly, the Defendants argue that if the Court grants summary judgment on Count I (race discrimination), there remains no federal jurisdictional basis on the remaining state tort claims and so the Court should dismiss those state law claims.

In response, Randle argues that she suffered an adverse employment action in that her hours were cut and she was subjected to a pattern of abuse and discrimination that she alone was subjected to which caused her to suffer severe physical and mental health issues which caused her to be unable to work and that caused her to be fired. She argues her hostile work environment claim is not time-barred because the Supreme Court has held that as long as there are timely filed charges which are themselves actionable, other facts which are not actionable are still admissible to show a pattern in a claim for hostile work environment. Randle also argues that it cannot be the case that her assault and battery claims are time-barred where the Defendants were put on notice of them with her original EEOC filings. With regard to her intentional infliction of emotional distress claim against Chase, Randle concedes that the IHRA preempts that claim as she "cannot maintain a separate action over the very same incidents [of alleged racial discrimination]."

## II

Summary Judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323-24. Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for

trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1993). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories, or admissions that establish that there is a genuine triable issue; she "must do more than simply show that there is some metaphysical doubt as to the material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986), *quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 818 (7th Cir. 1999). However, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Anderson*, 477 U.S. at 255. Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 250.

### III

### A

Title VII makes it unlawful for an employer "to fail to refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). For purposes of a race discrimination claim under Title VII, a plaintiff has the initial burden of establishing that: 1) she is a member of a protected class; 2) she performed reasonably on the job in accord with her employer's legitimate expectations; 3) despite her reasonable performance, she was subjected to an adverse employment action; and 4) similarly situated employees outside of her

protected class were treated more favorably by the employer. *David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017), *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If the plaintiff satisfies that burden, then the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the employer does so, the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual. *Id.*

The parties' arguments and evidence presented somewhat conflate the analysis the Court must engage in under *McDonnell Douglas*; however, the Court must still consider whether Randle can establish a *prima facie* case of race discrimination before the Court may engage in a pretext inquiry. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 327 (7th Cir. 2002). The Defendants do not dispute that Randle is a member of a protected class and performed reasonably on the job in accord with her employer's legitimate expectations. As for the third element of the *prima facie* case, on its face, the reduction in Randle's working hours from 40 hours to 30 hours per week was an "adverse employment action" as her compensation was diminished.[5] *See Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744 (7th Cir. 2002) (explaining that "adverse employment actions" fall into three groups of cases including where an "employee's compensation, fringe benefits, or other financial terms of employment are diminished").

With regard to the fourth element - similarly situated employees outside of the protected class who were treated more favorably by the employer – the Defendants only state that "[u]nless Randle has identified comparators under the fourth element, she fails to establish racial discrimination with circumstantial evidence." They essentially concede the fourth element as they proceed to argue

---

[5] The Defendants offer no argument otherwise.

that Randle cannot show that an adverse employment action was taken against her which was motivated by race (the first burden shift under *McDonnell Douglas*).[6]

Randle has established her initial burden and thus, the Court must next consider whether Chase has articulated a legitimate, nondiscriminatory reason for the adverse employment action of the reduction of Randle's working hours. Chase argues that she cannot show that a racially discriminatory motive caused the reduction in her working hours in 2010 or the verbal reprimand she received for the volume of her unproven complaints against Haney and Davis. Chase cites to Haney's and Bergh's deposition testimony in which each stated that Randle's hours were reduced in 2010 due to the reduction in business at the Wisconsin Plaza branch. Dft's MSJ, Haney Dep. (Doc. 89-7 at pg. 6) ("Hurlestine's hours were reduced by a decision of upper management . . . Due to the profitability of the branch"); Bergh Dep. (Doc. 89-8 at pg. 12) ("Business was shrinking"). Chase also cites to a Human Resources document in which a Note on March 1, 2010 provided:

> Sandi Bergh called to discuss conversation she is having today with Hurlestine. Sandi is adjusting the Teller FTE at the branch and only needs a 30 hour teller at this small branch. As Hurlestine is full-time, Sandi is going to talk with her about the business need for the change and offer her the opportunity to work at the Knoxville branch (just two miles or so away) as a full-time teller or to take the 30 hour position at the Wisconsin Plaza branch. We discussed talking points that Sandi could use in her conversation.

---

[6] Whether employees are similarly situated is a "flexible, common-sense, and factual inquiry." *David*, 846 F.3d at 225. "Relevant factors include whether the employees: held the same job description; were subject to the same standards; were subordinate to the same supervisor; and had comparable experience, education, and other qualifications – provided the employer considered these latter factors in making the personnel decision. *Id*. at 226 (internal citations omitted). Randle identified no other employees as "similarly situated." Notably, from the face of Randle's allegations in her Third Amended Complaint and the evidence the parties present on summary judgment, Randle has not established that *similarly situated* employees outside of her protected class were treated more favorably by Chase.

Dft's MSJ, Bergh Dep., Dep. Ex. 1 (Doc. 89-8 at pg. 17). Randle counters that she testified in her deposition that her hours were cut and she was the only employee whose hours were cut while Haney's and Davis's, both white employees, hours were not cut. In addition to her deposition testimony, her evidence in support includes a Human Resources document dated from June 24, 2009 to December 16, 2009 and her own Affidavit dated December 29, 2017. Plf's Resp. Exh. 4; Exh. 6 Randle Aff. (Docs. 91-4 and 91-6).

Even after drawing all reasonable inferences from Randle's cited evidence in her favor, the Court finds that the evidence does not create a material issue of fact that Chase's reason for Randle's reduction in hours was pretextual. Instead, the evidence reveals that Chase did not subject Randle to a reduction in hours based upon her race but that the reduction was due to legitimate, non-discriminatory reasons and *she herself chose* to experience a reduction in her hours.

Her cited-to Chase Human Resources document says nothing about a reduction in her working hours or even Randle's schedule generally. Her Affidavit in which she makes the bald assertion that it was only after she began reporting Davis's and Haney's harassment that her hours were cut came after she had already been deposed and the Defendants filed the instant Motion for Summary Judgment. Her Affidavit is self-serving and without factual support. *See Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) ("It is true that self-serving statements in affidavits without factual support in the record carry no weight on summary judgment"). During her deposition, Randle acknowledged that at the time she learned her hours were cut from 40 to 30 hours per week, "he [unidentified] claimed I guess it was slow or whatever . . . ." *See Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 614 (7th Cir.

2002) ("Courts generally ignore attempts to patch-up potentially damaging deposition testimony with a supplemental affidavit unless the party offers a suitable explanation—e.g., confusion, mistake or lapse in memory—for the discrepancy").

Haney's and Bergh's deposition testimony, on the contrary, is supported by the March 1, 2010 Chase Human Resources document which referenced the "business need for the change" in Randle's teller hours at the Wisconsin Plaza branch and that Randle would be offered the opportunity to work full-time at the Knoxville branch. While she testified during her deposition that Davis's and Haney's hours were not cut, the undisputed evidence shows that Davis and Haney were salaried employees. In other words, no pretext can be gleaned from this fact where Davis and Haney were not similarly situated to her as they were not tellers and were not hourly employees.[7]

Moreover, as the Defendants point out, Randle was offered an opportunity to transfer to the Knoxville branch into a full-time position. Randle does not point to any record evidence that contradicts the March 1, 2010 Chase Human Resources document. Her statement in her Affidavit that "the location [Defendants] tried to transfer me to was the Knoxville branch and the only position available to me was a twenty (20) per week [sic] branch" is, again, self-serving and without factual support in the record. Even if the Court were to consider that statement, it is only a scintilla of evidence which is insufficient to successfully oppose a summary judgment motion. *See Anderson*, 477 U.S. at 250. It was Randle who turned down the opportunity to transfer when offered to do

---

[7] As discussed above, the Defendants effectively conceded the fourth element of Randle's *prima facie* case. Nevertheless, this evidence was properly presented by the Defendants to support their summary judgment motion.

so again in 2011 given her complaints about Haney and Davis. During her deposition, Randle testified:

> [B]ut I know that Greg [Haney] and Sandi [Bergh] both also tried to get me to transfer. And like I told Sandi and Greg and the other parties that tried to get me to transfer and even Paul Pendler [vice president of employee assistance and work life program at Chase] we talked about it, and like I told them, I was here four years before these two individuals arrived. Okay. So if they didn't want to work with me or work with a black individual or whatever the situation may be, I'm not going anywhere. And I had built a reputation at that branch [Wisconsin Plaza]. I had strong communication and trust out of my customers and my customers adored me, and they would even come in and bring they kids in to see me even not on banking days. And like I told them, I'm not – I'm not leaving. That was my reason.

Dft's MSJ, Randle Dep. (Doc. 89-1 at pgs. 24-25). "A purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." *Lavalais v. Village of Melorse Park*, 734 F.3d 629, 634 (7th Cir. 2013). Here, the weight of evidence provides that Randle was offered simply a lateral transfer to the Knoxville branch. If a lateral transfer such as that cannot be considered a materially adverse employment action, then, certainly, the refusal to accept such a transfer cannot be considered as such.

Randle offers no argument in opposition to Defendants' that the verbal reprimand she received for the volume of unproven complaints she made against Davis and Haney did not amount to an adverse employment action. Accordingly, the Court finds Randle has conceded that point. The Court therefore finds that Randle has failed to present evidence sufficient to defeat the Defendants' Motion for Summary Judgment on her claim of race discrimination for the discrete adverse employment actions of the reduction in her work hours

and the reprimand she received for her unproven complaints against Davis and Haney.

Randle, however, also alleges that she was subjected to a hostile work environment because of her race. *See Herrnreither,* 315 F.3d at 745 (explaining that an "adverse employment action" falls into a third group of cases where the "harassment-mistreatment of an employee by coworkers or supervisors is sufficiently severe to worsen substantially [her] conditions of employment as they would be perceived by a reasonable person in the position of the employee"). To survive summary judgment on a hostile work environment claim, a plaintiff must prove four elements: 1) the plaintiff's workplace was both subjectively and objectively offensive; 2) the plaintiff's race was the cause of the harassment; 3) the harassment was severe or pervasive; and 4) there is a basis for employer liability. *Williams v. Waste Mgmt. of Ill.*, 361 F.3d 1021, 1029 (7th Cir. 2004); *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 714 (7th Cir. 2017).

Recently, the Seventh Circuit Court of Appeals considered a hostile work environment claim where some of the plaintiff's allegations fell outside of the statute of limitations. *Milligan-Grimstad*, 877 F.3d at 712. The Seventh Circuit explained that as a result, its analysis proceeded in two parts: first, the court had to determine which allegations survived the statute of limitations; and second, the court asked whether the allegations that did survive could prove a hostile work environment. *Id.* This Court will proceed with Randle's hostile work environment claim in like manner.

Randle filed her first IDHR/EEOC claim on August 23, 2012. Thus, only conduct that occurred after October 28, 2011 falls within the statute of limitations as 42 U.S.C. § 2000e-5(e)(1) provides that a plaintiff must file a charge within 300 days after the alleged unlawful employment practice occurred. However, as the *Milligan-Grimstad* court explained, the statute of limitations does not bar the

court from considering conduct that occurred several years before "so long as it formed a single unlawful employment practice that reached into the statutory period." 877 F.3d at 712. The Defendants argue that they should be granted summary judgment on the alleged acts of discrimination that occurred on October 28, 2011 or earlier. Randle counters that all of the alleged discriminatory acts may be considered as timely pursuant to the Supreme Court's decision in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). In that case, the Supreme Court explained that a discrete retaliatory or discriminatory act occurred on the day it happened. *Id.* at 110. The Supreme Court ultimately concluded that "a charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Id.* at 122. Still, "[w]hen it is evident long before the plaintiff sues that she was the victim of actionable harassment, she cannot reach back and base her suit on conduct that occurred outside the statute of limitations." *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999).

Randle's own allegations and the evidence she has presented reveal that it was evident to her long before she sued that she believed she was a victim of actionable harassment. *See Hardin*, 167 F.3d at 344 (stating that the continuing violation doctrine has delineated limits and a plaintiff cannot reach back and base her suit on conduct that occurred outside the statute of limitations). According to her own evidence, soon after their arrival to the Wisconsin Plaza branch, Haney and Davis directed their ire at Randle. Randle complained in March of 2010 to Bergh about a birthday card Randle received from Haney which Randle believed mocked her race. Plf's Third Amended Complaint, ¶ 17. In July 2010, Randle was referred to Chase's HR manager to investigate Randle's complaints. *Id.* at ¶ 19. Again in January 2011, Randle contacted Bergh about

14

"continuing harassment" by Haney. *Id*. at ¶ 21. On January 14, 2011, Randle wrote a letter to Chase's CEO regarding the "inappropriate behavior" by Davis and Haney. *Id*. at ¶ 23. Randle continued to reach out to others at Chase before October 28, 2011 to complain of Davis's and Haney's treatment of her. *Id*. at ¶¶ 27, 28, 32. Accordingly, as the plaintiff in *Hardin*, Randle cannot reach back and rely on evidence occurring prior to October 28, 2011 and so her hostile work environment claim must stand or fall on conduct that occurred after October 28, 2011. *See Hardin*, 167 F.3d at 345 (concluding that the plaintiff's Title VII claims for racial and sexual harassment would have to stand or fall on conduct limited to the limitations period alone without consideration of evidence occurring prior to 300 days before she filed her complaint with the state agency where her evidence made apparent she believed she was a victim of harassment long before she filed her complaint).

In their brief, the Defendants identify the allegations of Randle's Third Amended Complaint and statements during her deposition which fall within the limitations period (post-October 28, 2011). Dft's MSJ (Doc. 89 at pgs. 12-13). Those allegations include that Haney raised his hand in a position to slap Randle, Haney reduced Randle's hours to 28 hours per week, Davis threw a round buckle at Randle's arm, Davis and Haney put prints of penises on her window at work, and Davis and Haney vandalized Randle's car. During her deposition, Randle testified that Davis and Haney broke into her house three times to scratch up her furniture, steal her clothes, and either cut up her wigs or dye them different colors and then replaced them. She also testified that Davis and Haney pulled up her privacy fence, put holes in her swimming pool, spread "green stuff" on her carpets, and carved her ceiling trim. The Defendants assert that Randle offers no corroborating evidence for those allegations and she admitted that during that period of time she experienced hallucinations to a degree that

she had to miss work and take medication to deal with the hallucinations. Defendants also argue that there is no evidence to show the claimed acts were racially motivated.

The Court does not find that Randle has presented evidence sufficient to create a material dispute that her race was the cause of the harassment she alleges occurred at the Wisconsin Plaza branch during the limitations period. Randle maintains that she was "subjected to a pattern of abuse and discrimination that she alone was subjected to which caused her to suffer severe physical and mental health issues which caused her to be unable to work and that caused her to be fired." Plf's Resp. (Doc. 91 at pg. 10). The evidence she presents to defeat summary judgment includes her treating psychologist's deposition testimony in which Dr. Mary Papandria, Ph.D opined that Randle's depressive disorder with psychotic features evidencing paranoia and visual hallucinations was caused by her work environment. *Id*. at pg. 8.

While the complained of conduct need not have been explicitly sexual or racial in order to create a hostile work environment, the complained of conduct must have had a racial character or purpose to support a Title VII claim. *Hardin*, 167 F.3d at 345. Though Dr. Papandria testified that she believed Randle's race or gender caused the harassment she complained of at work, the Court does not find such evidence admissible (as Defendants argue) on the question of whether Randle was subjected to the conduct after October 28, 2011 because of her race. Under *Daubert v. Merrell Down Pharmaceuticals, Inc.*, a district court must first determine whether the expert's testimony pertains to scientific knowledge, and second, the district court must determine whether the evidence or testimony assists the trier of fact in understanding the evidence or in determining a fact in issue. *O'Conner v. Commw. Edison Co.*, 13 F.3d 1090, 1106 (7th Cir. 1994), *citing Daubert*, 509 U.S. 579 (1993).

16

Dr. Papandria's expert testimony does not satisfy the *Daubert* standard. The Defendants correctly argue that Dr. Papandria formulated her opinion based upon Randle's subjective statements about her work environment. While the Court has no reason to question Dr. Papandria's credentials to treat patients such as Randle, her testimony that race or gender discrimination was occurring at Randle's work to cause Randle to experience severe emotional issues amounts to subjective belief and is not substantiated by anything other than what Randle told her. During her deposition, Dr. Papandria testified:

> Q.     Did she relate to you any issues that she felt was being directed against her due to her race?
> A.           Yes.
>
> Q.     Going back to the history as you continued to see her, did you have the impression that this harassment started out, let's say, as her co-employees playing practical jokes on her?
>
>                  Mr. Hills:  Objection.  Speculation.
>
> Q.     Do you have any opinion or reference to that?
>
> A.     Well, you know, my clinical opinion is based on what she told me, and my impression of what she felt was that they had something against her and she thought possible because of her race and that they were determined to ruin her life, drive her crazy, cause her to be unable to work . . . .
>
> Q.     But is it your opinion that this [Randle's delusion] was caused by harassment at work . . .?
> A.     Yes . . . And from some of the things that she told me, definitely I would say there was harassment either based on her race or gender that was occurring at work and to a severity in her experience that caused her to have these emotional issues . . . .

Plf's Resp., Dr. Papandria Dep. (Doc. 91-2 at pgs. 10, 15, 46-47) (emphasis added). Moreover, there is nothing in her deposition to indicate that Dr. Papandria's

opinions were formed based upon just those allegations falling within the statute of limitations in this case.  For that reason as well, Dr. Papandria's opinion on race as the cause of Randle's harassment at work is inadmissible.  In the end, after drawing all justifiable inferences from the evidence and allegations Randle presents, the complained of conduct, at most, shows that Haney and Davis did not get along with Randle.  The conduct was neither explicitly nor inherently racial in character.

The Seventh Circuit Court of Appeals recently clarified that the test in such a case as this "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the discharge or other adverse employment action."  *David*, 846 F.3d at 224, *quoting Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016).  The evidence in this case, as set forth above, would not permit a reasonable factfinder to conclude that Randle's race caused the hostile work environment she alleges she experienced.  Summary judgment must therefore be granted in the Defendants' favor on Randle's hostile work environment claim.

## B

Having concluded that Chase is entitled to summary judgment on the federal claim in this case, the Court turns to the question of whether it should exercise supplemental jurisdiction over the remaining claims in this case, which all arise under Illinois law.  The basis for the Court's subject matter jurisdiction in this case is 28 U.S.C. § 1331, which grants federal district courts original jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  This jurisdiction stems from Count I of the Complaint.  The Court's jurisdiction over all other claims lies in its supplemental jurisdiction, which is codified in 28 U.S.C. § 1367(a), whereby the jurisdiction of a federal district court is extended to all claims that are so related to a claim within

the court's original jurisdiction that they form part of the same case or controversy within the meaning of Article III of the Constitution. *See City of Chi. v. Int'l Coll. Of Surgeons*, 522 U.S. 156, 164-65 (1997), *citing* 28 U.S.C. § 1367.

Although Section 1367 authorizes federal courts to exercise supplemental jurisdiction over state-law claims, this does not mean that federal courts must exercise jurisdiction in all cases. *See Int'l Coll. of Surgeons*, 522 U.S. at 172. Rather, supplemental jurisdiction is "a doctrine of discretion, not of plaintiff's right[.]" *Id*. Section 1367(c) permits a district court to decline to exercise supplemental jurisdiction for various reasons, including that the court has dismissed the claims over which it had original jurisdiction. *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614-15 (7th Cir. 2007), *citing* 28 U.S.C. § 1367(c). After a court has disposed of all the claims that gave it jurisdiction originally, a court must choose the course that best serves the principles of economy, convenience, fairness, and comity which underlie the supplemental jurisdiction doctrine. *Id*. at 615.

In the interests of comity, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. Those claims involve factual and legal questions sufficiently different from the federal claims raised in this case. Simply put, the state court should handle state law claims. The Court is aware of the exception to the general rule that the court relinquish jurisdiction of a state law claim if an interpretation of state law that knocks out the plaintiff's claim is obviously correct such that the federal court should retain and decide it. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 502 n.7 (7th Cir. 1999), *citing Van Harken v. City of Chi.*, 103 F.3d 1346, 1354 (7th Cir. 1997). Here, the Court had no occasion to interpret state law as applied to Randle's claim for IIED against Defendant Chase; rather, Randle simply conceded that she could not maintain a separate action for IIED against Chase over the very same incidents upon which her racial discrimination claim was based. This Court only goes so far as to acknowledge

that Randle conceded the futility of her claim for IIED against Chase.  To go a step further and consider her claims for IIED against the individual Defendants is to go beyond what this Court considers proper as constrained by 28 U.S.C. § 1367(c).  *See also Sanchez*, 503 F.3d at 615 (reiterating the "well-established law of this circuit [Seventh] that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial"), *citing Groce*, 193 F.3d at 501.

All remaining claims are accordingly dismissed pursuant to 28 U.S.C. § 1367(c).

## IV

For the reasons stated above, the Defendants' Motion for Summary Judgment on Count I (race discrimination) is GRANTED.  All other counts of the Third Amended Complaint are DISMISSED without prejudice.  This case is terminated.

*It is so ordered.*

Entered on February 13, 2018.


s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE